UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

NORTH SAVANNAH PROPERTIES,
LLC; MICHAEL HAMBLETON; and
JOHN SCOTT,

Plaintiffs,

v.                           4:10-cv-297

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
DARBY BANK & TRUST CO.,

Defendant.

## ORDER

## I. INTRODUCTION

Before the Court is the Federal Deposit Insurance Corporation's, as Receiver for Darby Bank and Trust Co. ("FDIC"), Renewed Motion for Summary Judgment. ECF No. 46. The FDIC asserts that "Plaintiffs have not produced evidence sufficient to withstand 12 U.S.C. []§ 1823(e)" and thus "cannot prove the essential elements of their claim." ECF No. 51 at 2. The Court agrees and *GRANTS* the FDIC's motion.

## II. BACKGROUND[1]

In March 2004, Michael Hambleton ("Hambleton"), Jerry Whitlow ("Whitlow"), and John Scott ("Scott") formed North

Savannah Properties, LLC ("NSP") to purchase, manage, and develop a large tract of land in Jasper County, South Carolina known as the Delta Plantation. ECF No. 48 at 1. Within the Delta Plantation lies a residential community known as Telfair Plantation. *Id.*

NSP obtained a loan to develop the plantations from Darby Bank ("Darby") for $5,085,938 that Hambleton, Whitlow, and Scott personally guaranteed. ECF Nos. 48 at 2; 48-2 at 6. As part of the financing process, NSP allegedly submitted its development plan to Darby. ECF No. 48 at 2. Plaintiffs allege the development plan detailed (1) NSP's "sale of eighteen restricted 'investor lots' within the Telfair Plantation" to raise $4,500,000 for purchase of the Delta Plantation; and (2) a prohibition on investors selling those lots until NSP sold twenty regular lots. ECF Nos. 48 at 2-3; 1-3 at 4. Of critical importance, the investor lots comprised a portion of the collateral securing the loan from Darby. ECF No. 48-2 at 3.

After obtaining the loan money from Darby, NSP purchased Delta Plantation from Millard Oakley ("Oakley") for $4,500,000, plus a conveyance of two of the investor lots. *See* ECF Nos. 48 at 2-3; 48-2 at 2-3. Darby then "had NSP execute a Promissory Note, Mortgage, and Construction Loan Agreement in [Darby's] favor." ECF No. 48 at 3. All three documents are signed by both NSP and Darby; approved by Darby's board; and present in Darby's files for the loan. ECF Nos. 51 at 3; 48-2 at 68-87. Notably, the promissory note expressly permits Darby to "release any party or guarantor or

---

[1] Because this case is before the Court on a motion for summary judgment, the facts and inferences from the record are presented in the light most favorable to the nonmoving party, here the Plaintiffs. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008).

collateral . . . without the consent of or notice to anyone." ECF No. 48-2 at 69.

Also part of Darby's file for the loan is the loan commitment letter. ECF No. 51 at 4. That letter, signed by Darby and NSP, contains general terms regarding items like the loan's security, prepayment, insurance, and Darby's role in the development project, along with a specific requirement that at least twenty regular lots be sold before investor lot sales. *See* ECF No. 48-2 at 6-8. The commitment letter also stated that its terms were to "survive the closing of the loan." ECF No. 48-2 at 2, 6.

Sometime after the sale of Delta Plantation closed, Oakley requested Darby release his lots as collateral for the mortgage Darby held on the Delta Plantation. ECF No. 48 at 3. Darby obliged, and at the same time "unilaterally released the restricted investor lots as well." *Id*. Scott and Oakley both "personally confronted" Darby's president in an attempt to have the bank "reverse its error," to no avail. *Id*.

Plaintiffs allege that Darby's release of the investor lots as collateral "was likely the result of self-dealing." ECF No. 48 at 4. They claim that with Darby's release, two lot owners associated with Darby "were free to sell their lots without waiting for the sale of 20 non-investor lots within the Telfair Plantation."[2] *Id*. Most importantly, Plaintiffs assert the release violated the written agreement between Darby and NSP. *Id*. at 7.

Plaintiffs originally filed suit in Chatham County Superior Court on October 21, 2008. *See* ECF Nos. 1-3; 46-1 at 1. Plaintiffs requested the "Court in equity cancel the debt owed by . . . NSP and its guarantors." ECF No. 1-3 at 5. As Plaintiffs see matters, the "improper self-dealing acts by . . . Darby . . . should void the Plaintiff's obligation to [Darby] in equity." ECF No. 46-1 at 2. Plaintiffs also sought unspecified "actual and exemplary damages," ECF No. 1-3 at 5, "based upon their allegation that Darby Bank acted in bad faith." ECF No. 46-1 at 2.

On November 12, 2010, the FDIC accepted appointment as Darby's receiver after the Georgia Department of Banking and Finance closed and took possession of Darby. *See id*. The FDIC subsequently removed the case to this Court. ECF No. 46-2 at 1. After the FDIC filed their notice of removal, Plaintiffs moved to remand. ECF No. 46-2 at 1. This Court granted the motion in May of 2011. *Id*. The FDIC appealed, however, and the Eleventh Circuit ultimately reversed this Court's remand, finding that the FDIC had been properly substituted as receiver. *Id*. at 2. The FDIC then renewed the instant motion which the remand order previously mooted. *Id*.

### III. ANALYSIS

Plaintiffs claim that Darby, by releasing the investor lots as collateral, breached an agreement with Plaintiffs and in so doing made it impossible for NSP to obtain refinancing. *See* ECF No. 48 at 7. At this stage of litigation, Plaintiffs seek only actual damages caused by this breach. Although their complaint also requested equitable relief and exemplary damages, *see* ECF No.

---

[2] Plaintiffs do not at any point allege that any investor, Darby insider or not, sold their lot after Darby released it as collateral.

1-3 at 5, Plaintiff's response to the motion for summary judgment makes clear they wish to abandon those relief requests. *See* ECF No. 48 at 5, 7. The Court accordingly limits this Order to evaluation of the only remaining issue—whether Plaintiffs have produced enough evidence that survives application of 12 U.S.C. § 1823(e) to prove the elements of their breach claim.

After defining the proper standard of review, that evaluation (1) sets forth the law surrounding § 1823(e); (2) applies § 1823(e) to each document Plaintiffs claim demonstrates an agreement by Darby not to release the investor lots; and (3) asks whether any evidence that survives application of § 1823(e) suffices to prove a claim for breach of contract.

**A. Standard of Review**

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The moving party "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party then "may not rest upon the mere allegations or denials of [their] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial." *Young*

*v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).

Although courts view evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "a complete failure of proof concerning an "essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

With the proper review lens established, the Court now turns to the law of §1823(e).

**B. 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* Doctrine**

In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), the Supreme Court held that agreements "outside the documents contained in [a] bank's records would not operate as a defense against suit by the FDIC on a note acquired from a failed bank." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) ("RTC") (citing *D'Oench*, 315 U.S. at 459). Congress later "embodied the *D'Oench* estoppel doctrine" in 12 U.S.C. §1823(e). *Id.* at 593. Section 1823(e) provides:

(1) . . . No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section . . . either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement --

A. is in writing,

3

B. was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

C. was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

D. has been, continuously, from the time of its execution, an official record of the depository institution . . . .

The "rule that has emanated" from D'Oench and § 1823(e) is that:

[i]n a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1515 (11th Cir. 1991).

12 U.S.C. 1821(d)(9)(A) makes explicit that an agreement "which does not meet the requirements set forth in section 1823(e) . . .

shall not form the basis of . . . a claim against the [FDIC]."[3]

The Court now applies § 1823(e) to the alleged evidence of an agreement by Darby not to release the investor lots, and then considers whether the evidence that passes through the 1823(e) gate is sufficient to survive summary judgment.

### C. The Alleged Investor Lot Agreement Evidence

Plaintiffs claim that several documents satisfy § 1823(e) and illustrate that Darby agreed to not release the investor lots until twenty regular lots sold. First, they argue the loan documents themselves—the promissory note, mortgage, and construction loan agreement ("loan documents")—"both support NSP's contention that it had a written agreement with Darby Bank and also show that Darby . . . breached its written agreement with NSP." ECF No. 48 at 7. Plaintiffs also point to the loan commitment letter as a document that meets § 1823(e)'s requirements and goes to establish the existence of an agreement not to release lots. *See id.* Finally, Plaintiffs aver that during the financing process, they submitted a development plan that, like the commitment letter, establishes an agreement between NSP and Darby not to release investor lots. *Id.* at 2.[4]

---

[3] Section 1823(e) also applies to claims against the FDIC in its capacity as receiver. *See FSLIC v. Two Rivers Assocs., Inc.*, 880 F.2d 1267, 1277 (11th Cir. 1989) ("[T]he reasoning behind *D'Oench, Duhme* requires that it be applied to protect the FDIC . . . regardless whether the regulatory body is acting in its capacity as a receiver or as a corporate insurer.").

[4] Plaintiffs also submitted (but did not discuss in their response brief) an affidavit from their attorney, Brent J. Savage, and two letters Mr. Savage wrote on behalf

### 1. The Loan Documents

The loan documents all satisfy § 1823(e). *See* ECF No. 51 at 3 (conceding that the loan documents meet the requirements of §1823(e)). Plaintiffs may therefore use them to establish the presence of an agreement between Darby and NSP to not release investor lots.

The problem, however, is that none of these documents do anything to "show that Darby Bank breached its written agreement with NSP." ECF No. 48 at 7. The construction loan agreement and the mortgage do not address releases of collateral by Darby, much less the investor lots specifically, at all.

The promissory note, on the other hand, mentions the release of collateral, but only to the disadvantage of Plaintiffs. It states that Darby "may renew or extend . . . this loan or *release any party or guarantor or collateral* . . . without the consent of or notice to anyone." ECF No. 48-2 at 69. Far from establishing a genuine dispute of fact over whether Darby breached an agreement by releasing the investor lots, the promissory note goes a long way to fatally undermining Plaintiffs claims.

### 2. The Loan Commitment Letter

The loan commitment letter's satisfaction of § 1823(e) is ambiguous. Both Darby and NSP signed the letter, *see* ECF No. 48-2 at 6-8, and Darby does not contest Plaintiffs' assertion that the letter is in Darby's loan file. From the nature of the letter—essentially it is an offer for loan terms that Darby agreed to—it also appears likely that Darby's board's approved it in satisfaction of §1823(e)(1)(C).

Even assuming the commitment letter satisfies § 1823(e), it contains no language prohibiting Darby from releasing the investor lots.[5] Nor does the letter "otherwise require the investor lots to . . . remain[] subject to Darby Bank's mortgage." ECF No. 51 at 4. Together the commitment letter and loan documents contribute nothing to Plaintiffs' claim other than express approval of Darby's release. *See* ECF No. 48-2 at 69.

### 3. The Development Plan

Plaintiffs also argue that a development plan for Delta Plantation submitted to Darby during the financing process establishes an agreement that Darby later breached. But no such plan exists in the record. As the Court cannot consider what amounts to conjecture

---

of Scott and NSP to Darby. These letters do nothing to establish an agreement of any kind between Darby and NSP. Even if they did, §§ 1823(e) and 1821(d)(9)(A) prohibit the Court from considering either. Both are signed only by Mr. Savage, not Darby, and then not contemporaneously with Darby's loan to NSP. *Compare* ECF No. 48-3 at 3-5 (Savage letters executed in 2009), *with* ECF No. 48-2 at 6 (loan commitment letter from 2004); *see* 12 U.S.C. § 1823(e).

[5] The commitment letter does state that "[a] minimum of 20 lots held by Darby . . . must be sold prior to any Investor lot sales." ECF No. 48-2 at 8. If Darby insiders sold their investor lots prior to the sale of twenty regular lots with Darby's approval or aid, Plaintiffs could more convincingly argue breach. But Plaintiffs do not allege or demonstrate that Darby insiders prematurely sold investor lots; rather, they allege that Darby's release of those lots as collateral caused difficulty in obtaining refinancing for NSP. *See* ECF Nos. 1-3 at 5; ECF 48 at 4. This language therefore provides no support for Plaintiffs' current claims.

by Plaintiffs as evidence of an agreement, all argument related to the development plan is for naught.

In sum, the evidence presented by Plaintiffs of an agreement between NSP and Darby over lot releases amounts to one contract, the promissory note, that expressly supports the *FDIC*'s position—that Darby in fact had the authority to grant the releases with or without NSP's permission.  *See Id*.  Not only do Plaintiffs suffer a complete failure of proof on *an* element of their claim, they suffer such a failure on *all* elements of their claim.  The evidence they submit either does not survive § 1823(e) (the ephemeral "development plan") or contains no evidence whatsoever of an agreement between Darby and NSP that Darby would not release investor lots (the loan documents and the commitment letter).

## IV.  CONCLUSION

Plaintiffs have demonstrated no facts that make out a genuine dispute suitable for trial.  The FDIC is entitled to judgment as a matter of law on all of Plaintiffs' claims.  The Court therefore **GRANTS** the FDIC's motion for summary judgment.  Plaintiff's claims are hereby **DISMISSED**.

This 11th day of February 2013.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

6